UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STANLEY DUSHANE, JR.,

                Plaintiff,

      -against-                                 1:13-CV-0677 (LEK/CFH)

LEEDS HOSE COMPANY #1 INC.; *et al.*,

                Defendants.

___

**MEMORANDUM-DECISION and ORDER**

**I.**     **INTRODUCTION**

In this action arising out of Plaintiff Stanley Dushane, Jr.'s ("Plaintiff") removal from his position as a volunteer firefighter with Defendant Leeds Hose Company #1 Inc. ("Leeds"), Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief may be granted. See Dkt. Nos. 1 ("Complaint"); 6 ("Motion"). For the following reasons, the Motion is denied.

**II.**     **BACKGROUND**[1]

Leeds is a corporation performing fire protection services for the Town of Catskill ("Catskill"). Compl. ¶ 2. Plaintiff began serving as a volunteer firefighter and member of Leeds in 2008. Id. ¶ 13. In January 2013, he ran against the incumbent Leeds Chief, Defendant Thomas McCullough, III ("McCullough"), for election to that position. Id. ¶¶ 14-15. Thirty-eight Leeds

___

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

members voted; both Plaintiff and McCullough received nineteen votes. Id. ¶ 16. Leeds members agreed that, pending the provision of an opinion from the Leeds attorney as to how to resolve the deadlock, McCullough would retain his position. Id. ¶ 16. McCullough proceeded to remove Plaintiff from the position of Chief Foreman and remove a supporter of Plaintiff's from the position of Foreman. Id. ¶ 17. McCullough then informed Plaintiff that Plaintiff faced "a long road full of shit and issues." Id. ¶ 18. At a late-February 2013 Leeds meeting, Defendant John Elliot ("Elliot"), Leeds's President, informed attendees that, following an attorney recommendation that the Leeds Board of Directors ("Board") select the Leeds Chief, the Board has selected McCullough. Id. ¶ 20. The following month, Plaintiff was told, both orally and in writing, that he was suspended based on an internal complaint alleging that he had made a "derogatory sexual reference to a female member under the age of eighteen," an action that had "an adverse impact on the ability of this firefighter to comfortably perform her duties." Id. ¶¶ 22-30; Dkt. No. 1-1 ("Suspension Notice"). A Board meeting was held in late March 2013, at which the Board received various exculpatory evidence. Id. ¶ 31. Nevertheless, on March 26, 2013, the Board terminated Plaintiff "due to multiple counts of insubordination." Id. ¶¶ 32-33; Dkt. No. 1-2 ("Termination Notice").

Plaintiff then filed the Complaint. He alleges that he was suspended and terminated without due process and in retaliation for his "First Amendment protected speech and political activity." Id. ¶¶ 37-40. Defendants filed the Motion and a supporting Memorandum arguing that: (1) Defendants are not state actors; (2) Plaintiff's failure to challenge his dismissal under N.Y. C.P.L.R. § 7801 et seq. ("Article 78") precludes him from raising a due process claim; (3) Plaintiff did not engage in activity protected under the First Amendment; and (4) Plaintiff cannot demonstrate that the harassing-comment explanation for his termination was pretextual. See generally Dkt. No. 7

2

("Memorandum").  Plaintiff responded and Defendants replied.  Dkt. Nos. 10 ("Response"); 11 ("Reply").

**III.   LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Twombly, 550 U.S. at 556.  "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Thus, although a court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff, see Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006), an action is subject to dismissal where the court is unable to infer more than the "sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**IV.   DISCUSSION**

**A. State Action**

Plaintiff brings claims under the First and Fourteenth Amendment of the United States Constitution.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (quotation marks omitted).  To determine whether the conduct of a

nominally private entity such as Leeds may be considered state action, the Second Circuit uses three main tests:

> (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (brackets omitted). Each inquiry focuses on "the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." Id.

Plaintiff implicitly argues that Leeds is a state actor pursuant to the public function test. See Compl. ¶ 2 (alleging that Leeds "is a corporation performing traditional governmental fire protection services"); Resp. at 1-3. Under this test, there is state action "where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity." Horvath v. Westport Library Ass'n, 362 F.3d 147, 151 (2d Cir. 2004); see also Janusaitis v. Middlebury Volunteer Fire Dep't, 607 F.2d 17, 23 (2d Cir. 1979) ("If the function is one which is traditionally within the exclusive province of the government, the entity performing the function may be considered to be an instrumentality of the government."). The Second Circuit has held that firefighting constitutes such a public function. See Janusaitis, 607 F.2d at 22 ("[F]ire protection is a function so traditionally associated with sovereignty that its performance, even by an otherwise 'private' entity, constitutes state action."); see also Gibson v. Hurleyville Fire Co. No. 1, 1 F. Supp. 2d 329, 331 (S.D.N.Y. 1998) ("Because the Fire Company is performing a governmental function it is a state actor. Fire protection is a public function which amounts to state action."); Laratro v City of New York, 861 N.E.2d 95, 96 (N.Y. 2006) ("Protecting health and safety is one of

municipal government's most important duties."). Indeed, under New York law, even towns that provide fire protection services through a fire corporation incorporated under Not-For-Profit Corporation Law § 1402—such as Leeds—retain their statutory fire-protection obligation. See Miller v Morania Oil of Long Is., O.C.P., 599 N.Y.S.2d 303, 304 (App. Div. 1993); Not-For-Profit Corporation Law § 1402 (e) ("A fire . . . corporation . . . shall be under the control of the city, village, fire district or town authorities having, by law, control over the prevention or extinguishment of fires therein."); Reply at 11. Defendants appear to acknowledge that the firefighting Leeds has been contracted to perform constitutes a public function and that Leeds is therefore a state actor when engaged in firefighting. See Mem. at 5 ("[T]here is no question that Leeds performs a state function when its members act in the course of their duties . . . as volunteer firefighters, whether en route to a fire call or performing actual firefighting."); Reply at 11 ("[I]t is well settled that municipalities of New York State have a duty to provide fire protection to their citizens."); Dkt. No. 11, Ex. A. But they argue that the lack of control exercised by Catskill over Leeds's personnel decisions, and the non-public nature of those decisions, renders Leeds a private actor when it suspended and terminated Plaintiff. See Mem. at 5; Reply at 11.

Defendants focus correctly on the activity—the suspension and termination—that Plaintiff challenges. But their overly formalistic attempt to conceptually sever firefighting from personnel decisions fails. The firehouse door does not demarcate state and private action; Leeds's personnel decisions are integral to its firefighting function because they are necessarily decisions about who will, and who will not, fight fires. Cf. Mark v. Borough of Hatboro, 51 F.3d 1137, 1148 (3d Cir. 1995) ("[W]e note that the individual act alleged to be wrongful—the method of electing firefighters—is directly related to the state-created duty to provide fire protection in the first

place.").² Indeed, the Second Circuit has found that a volunteer fire department's suspension and dismissal of a firefighter constitutes state action even where the contracting town had "no ordinances, rules or regulations relating to such membership practices as discipline and termination, . . . [and had] [n]ever become involved in these practices." Janusaitis, 607 F.2d at 22;³ see also Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 347-48 (4th Cir. 2000) (finding volunteer firefighting company's personnel decisions constituted state action even though the state had no involvement); Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214, 219 n.1 (4th Cir. 1993) ("If the [actor] were held to be performing a public function for purposes of state action doctrine, then it would be difficult to conclude that personnel decisions reached during the performance of that public function were not subject to constitutional strictures."). Plaintiff has therefore sufficiently alleged that his termination and suspension constituted state action under the public function test.⁴

---

² Or, to use an aphorism attributed to University of Texas football coach Darrell Royal regarding the relative importance of recruiting and game strategy: "It's not the X's and the O's but the Jimmys and the Joes." See http://espn.go.com/college-football/hot?id=9395142.

³ There was more state involvement with the volunteer fire department in Janusaitis than alleged here: the town had final approval as to the member elected to serve as chief and the company occupied town-owned land and buildings free of charge. See Janusaitis, 607 F.2d at 21. But the Second Circuit deemed these indicia of control relevant only to its determination that the company was a state actor under the symbiotic relationship test, not to its determination that the company was also a state actor under the public function test. See id. at 23-25. Moreover, Janusaitis was decided after trial. It is entirely plausible that discovery might reveal some of the same type of governmental involvement here.

⁴ Defendants also argue in their Reply that Leeds is not a state actor under Lebron v. National R.R. Passenger Corp., 513 U.S. 374 (1995), which set forth a version of the close nexus test. See Braswell v. Community Solutions, Inc., No. 11-CV-01043, 2013 WL 663621, at *4 n.4 (D. Conn. Feb. 4, 2013). But an entity that is a state actor under any test is a state actor, even where it is not under another test. See Horvath, 362 F.3d 147 (2d Cir. 2004) (finding that entity was a state actor under Lebron even though it was not state actor under the public function test); Braswell, 2013 WL 663621, at *4 n.4 (determining that, because entity was a state actor under the public function

6

**B. First Amendment**

To prevail on a First Amendment retaliation claim, a public employee[5] must demonstrate that: (1) her speech was protected; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected speech and the adverse employment action. Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011). Defendants do not contest that Plaintiff's suspension and termination constituted adverse actions. See Mem. at 8-12; Reply at 6-8; see also Goldstein, 218 F.3d at 356 (finding volunteer firefighter's suspension and termination constituted actionable retaliation because they had "stripped [plaintiff] of the powers, rights, and obligations heaped upon members"). However, they argue that: (1) Plaintiff did not engage in protected speech; and (2) even if he did, his suspension and termination were motivated solely by his harassing comment to a female member of Leeds. See Mem. at 8-12; Reply at 6-8.

*1. Protected Speech*

"The First Amendment protects a public employee's speech from retaliation only where the employee's speech relates to a 'matter of public concern.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is,

---

test, the court "need not consider" the Lebron test). Thus, because Leeds is a state actor under the public function test, it is a state actor even though, as Defendants correctly note, it would not so qualify under Lebron.

[5] The First Amendment protects public employees from retaliation. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). Defendants do not dispute that, if Plaintiff's suspension and termination constitute state action, then Plaintiff is a public employee for purposes of the First Amendment. See Mem. at 8-9; Reply at 11; see also Janusaitis, 607 F.2d at 25-27 (treating member of volunteer fire department as a public employee); Goldstein, 218 F.3d at 351-52 (same).

7

a subject of general interest and of value and concern to the public." Snyder v. Phelps, 131 S. Ct. 1207, 1216 (2011) (citation and quotation marks omitted).

Here, Plaintiff asserts that he engaged in protected activity by "campaigning" for election to the position of Chief and speaking "about who should be elected." Compl. ¶ 14; Resp. at 10. Defendants contend that Plaintiff has failed to identify specific protected speech. See Mem. at 7. But, in light of Leeds's public-serving firefighting functions, discussed *supra*, it is entirely plausible, and indeed quite likely, that some speech incident to Plaintiff's campaigning for Leeds Chief and against the reelection of McCullough touched on matters of public concern. Cf. Connick, 461 U.S. at 156 ("It is hornbook law . . . that speech about 'the manner in which government is operated or should be operated' is an essential part of the communications necessary for self-governance the protection of which was a central purpose of the First Amendment." (Brennan, J., dissenting) (quoting Mills v. Alabama, 384 U.S. 214, 218 (1966))); cf. Bachus v. Schenectady City Sch. Dist., No. 09-CV-0843, 2011 WL 500540, at *9 (N.D.N.Y. Feb. 10, 2011) (finding that plaintiff's announcement that he intended to run for the presidency of a public employees' union constituted protected speech). Plaintiff has therefore sufficiently alleged that he engaged in protected speech.

Moreover, even if Plaintiff's failure to identify specific speech were fatal, it is likely that his mere candidacy for the position of chief is protected by the First Amendment. Although "Supreme Court . . . precedent is not entirely clear regarding the degree of First Amendment protection for candidacy, . . . every case addressing the issue has found at least some constitutional protection. A plaintiff's candidacy cannot be burdened because a state official wishes to discourage that candidacy without a whisper of valid state interest." Randall v. Scott, 610 F.3d 701, 713 (11th Cir. 2010); see also Jantzen v. Hawkins, 188 F.3d 1247 (10th Cir. 1999) ("[P]laintiff's political speech—his

8

candidacy for office—undoubtedly relates to matters of public concern"); Bardzik v. County of Orange, 635 F.3d 1138, 1144 (9th Cir. 2011) ("The First Amendment protects the rights of citizens . . . to run against an elected official."); Herrera v. Weathers, No. 94-2286, 1995 WL 723637, at *1-2 (10th Cir. Dec. 7, 1995) (holding that running for election for sheriff constitutes protected activity); Click v. Copeland, 970 F.2d 106 (5th Cir. 1992) ("It is undisputed that . . . running for elected office, addresse[s] matters of public concern."); Newcomb v. Brennan, 558 F.2d 825, 828 (7th Cir. 1977) (finding First Amendment protection for plaintiff's candidacy where he was allegedly fired because his supervisor disapproved of that candidacy). Defendants note that the position of Leeds Chief is not a public office under the New York Public Officers Law. See Mem. at 7. But state-law characterizations of public office are not determinative of the First Amendment's reach—indeed, the First Amendment has been found applicable to candidacy for positions of an arguably more private nature than the position at issue here: the captaincy of a many-member entity performing the traditionally public function of firefighting. See.e.g., Scott v. Goodman, 961 F. Supp. 424, 436, 441-42 (E.D.N.Y. 1997) (finding that employee's running for union office constituted protected activity). Plaintiff has therefore sufficiently alleged protected activity.

*2. Causation*

To prevail on a First Amendment claim, a plaintiff need show only that her protected speech was "a substantial or motivating factor in the [adverse action]." Board of Comm'rs, Wabaunsee Cnty. v. Umbehr, 518 U.S. 668, 675 (1996); see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 553 (2d Cir. 2001). Thus, a plaintiff need not show that "defendant's proffered reason was false or played no role in the decision to terminate h[er], but only that it was not the only reason, and that h[er] [protected activity] was at least one motivating factor."

9

Nagel Debell v. Maimonides Med. Ctr., No. 09-CV-3491, 2011 WL 4710818, at *10 (E.D.N.Y. Sept. 30, 2011).

A plaintiff may demonstrate causation by, *inter alia*, "showing that the protected activity was followed closely by [retaliatory] treatment, or through other circumstantial evidence." Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (quotation marks omitted). In general, a temporal gap of less than two months is sufficient to give rise to an inference of causation. See Mazurkiewicz v. N.Y.C. Health & Hosps. Corp., No. 09 Civ. 5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010). "Temporal proximity is just one method of demonstrating causation, and therefore the absence of temporal proximity does not demonstrate conclusively a lack of causation." Chan v. NYU Downtown Hosp., No. 03 Civ.3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 2004). Evidence of pretext may alone suffice to demonstrate causation. See Xu-Shen Zhou v. State Univ. of N.Y. Inst. of Tech., 499 F. App'x 105, 108-09 (2d Cir. 2012) (reversing grant of summary judgment to employer based on evidence of the falsity of defendants' termination explanations); Kessler v. Westchester Cnty. Dept. of Social Servs., 461 F.3d 199 (2d Cir. 2006) (same). Moreover, an employer's retaliatory *vel non* motivation is particularly ill-suited for resolution on a motion to dismiss. Cf. Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1224 (2d Cir. 1994) (stating that when an employment case turns on the intent of a party, a trial court should be particularly cautious before granting the "drastic provisional remedy" of summary judgment).

Plaintiff has sufficiently alleged a causal connection between his protected activity and his suspension. The Complaint notes that McCullough threatened him with "a long road of full of shit and issues" during a discussion three days after the election, and that, a few weeks later, Elliot informed Plaintiff that he would do "everything in his power" to have Plaintiff removed as Chief

10

were he selected. Compl. ¶¶ 18-19. These comments explicitly evinced hostility towards Plaintiff, and, in temporal context, suggest hostility towards his protected activity. See Staub v. Proctor Hosp., 131 S.Ct. 1186, 1194 (2011) (finding supervisor's statement that she was "trying to 'get rid of'" plaintiff evidence of retaliatory animus); Terry v. County of Cayuga, No. 11-CV-1296, 2013 WL 5464395 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.) ("Employer comments or actions evincing animus towards [protected activity] can create an inference of retaliation."); Madera v. Metro. Life Ins. Co., No. 99 CIV. 4005, 2002 WL 1453827, at *7 (S.D.N.Y. July 3, 2002) (noting that comments evincing hostility towards the plaintiff demonstrated retaliatory animus).

Plaintiff also alleges that he was suspended two months after the election and McCullough's threatening comment and less than two months after Elliot's threatening comment, and that he was terminated approximately two weeks after he was suspended. This constitutes temporal evidence of causation. See Chan v. NYU Downtown Hosp., No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004) (noting that "evidence of an intervening pattern of antagonism" may bridge a temporal gap between protected activity and adverse action ). Plaintiff has therefore plausibly alleged causation.

Defendants argue that, despite its allegations of retaliatory animus and temporal proximity, the Complaint indicates that Plaintiff was suspended and terminated solely because a female member of Leeds complained that Plaintiff had harassed her. Specifically, they point to: (1) the severity of Plaintiff's reported misconduct; (2) Plaintiff's failure to allege that the female Leeds member recanted her complaint; and (3) the Board's exclusive focus, in its meeting and Suspension Notice, on the harassing comment. Mem. at 10-12; Reply at 7-8. The Court finds, however, that the Complaint plausibly suggests pretext. First, Plaintiff has alleged that Defendants have offered

inconsistent explanations for his termination: his Termination Notice indicated that he was being terminated due to "*multiple* counts of insubordination" (emphasis added), while Defendants now allege that Plaintiff was terminated only for the harassing comment. See Mem. at 10-12; Reply at 7. This inconsistent explanation is evidence of pretext. See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013). Second, the Complaint plausibly alleges that the Board may not have believed that Plaintiff made the comment. Plaintiff alleges that: (1) one of the witnesses to the incident, Forrest Koerner Fox ("Fox"), told the Board that he, not Plaintiff, had made the harassing remark; and (2) another Leeds member told the Board that Plaintiff had made the remark.[6] Compl. ¶¶ 31, 33. Moreover, Fox was immediately suspended by the Board after his admission. Id. ¶ 32. Of course, if, as Defendants claim, the female member continued to assert that Plaintiff had made the comment, Defendants could credit her version over that of the other two members. But that Defendants suspended Fox indicates that they may have believed his account that he, and *not* Plaintiff, made the comment. Ultimately, Defendants' motivation for terminating Plaintiff is a disputed issue of fact not yet suitable for resolution.

### C. Procedural Due Process

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any

---

[6] Puzzlingly, Plaintiff also cites hostile work environment caselaw for the proposition that the comment he is alleged to have made to the female Leeds member "hardly" amounts to sexual harassment as a matter of law. Resp. at 11 n.4. Similarly, the Complaint seems to suggest that the alleged comment—that the female member "looked like a whore with her nose ring in"—was insufficient to justify Plaintiff's suspension or termination. Compl ¶ 31. Plaintiff's attempt to minimize the severity of this comment is troubling and legally irrelevant. Leeds does not need to demonstrate that the comment was actionable under Title VII; instead, Leeds must show only that the comment, rather than Plaintiff's First Amendment-protected speech, actually motivated its decision to suspend and terminate Plaintiff. As employers are free to terminate employees for any lawful reason, they are certainly free to terminate employees for making deeply offensive and misogynistic comments to teenage coworkers.

person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. "To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013) (citing Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012)). "[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" Id. (quoting Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)) (second alteration in original). Here, Defendants do not dispute that, if Plaintiff's termination and suspension constituted state action, then he had a property right in his position as a member of Leeds and was deprived of that property right. See Mem. at 8; Reply at 5-6; see also Reed v. Medford Fire Dept., Inc., 806 F. Supp. 2d 594, 610 (E.D.N.Y. 2011) ("[I]t is well-settled that in New York, volunteer firefighters are considered public employees and must be afforded due process in disciplinary proceedings."); Greene v. Medford Fire Dep't, Inc., 775 N.Y.S.2d 538, 539 (App. Div. 2004). They argue, however, that: (1) the availability of an Article 78 proceeding precludes Plaintiff from bringing a procedural due process claim; and (2) Plaintiff received the requisite process. See Mem at 8; Reply at 5-6.

*1. Sufficiency of an Article 78 Proceeding*

A procedural due process claim is precluded where the state provides constitutionally adequate procedural remedies but the employee does not avail herself of those remedies. See New York State Nat. Org. for Women v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001). An Article 78 proceeding is a constitutionally adequate post-deprivation remedy. Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984). Thus, if an employee is constitutionally entitled to only a post-deprivation

13

hearing, her failure to initiate an Article 78 proceeding precludes a procedural due process claim. Id. However, if an employee is constitutionally entitled to a pre-deprivation hearing, she may refrain from bringing an Article 78 proceeding but bring a procedural due process claim premised on the non-provision of an adequate pre-deprivation hearing. Id.; Reed, 806 F. Supp. 2d at 612. Thus, the Court must determine whether Plaintiff was entitled to a pre-suspension and pre-termination hearing.

"Where a deprivation at the hands of a government actor is 'random and unauthorized, hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (quotation marks omitted). However, if an employee's termination is authorized by the state and therefore predictable, "the availability of post-deprivation procedures will not, ipso facto, satisfy due process." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996). Rather, the employee must generally be given "notice and a limited opportunity to be heard *prior* to termination." Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) (emphasis added) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985)).[7] An action is authorized

---

[7] Although a pre-deprivation hearing is generally required, see Brody v. Village of Port Chester, 434 F.3d 121 (2d Cir. 2005) ("The general rule is 'due process requires an opportunity for a hearing before a deprivation of property takes effect.'" (quoting Fuentes v. Shevin, 407 U.S. 67, 88 (1972))), especially strong government interests in immediately effecting a personnel action and/or especially weak employee interests in maintaining employment until the post-deprivation hearing may render a pre-deprivation hearing constitutionally unnecessary. See Gilbert v. Homar, 520 U.S. 924, 930 (1997); Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in *limited* cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." (emphasis added)). However, because Defendants do not advance this argument, see generally Mem.; Reply, the Court does not reach it and assumes that the general rule requiring a pre-deprivation hearing is applicable to Plaintiff's suspension and termination.

14

where a state delegates the power and authority to effect the complained-of deprivation, because the "Constitution impose[s] on the[] [delegated-to defendants the] State's concomitant duty to see that no deprivation occur without adequate procedural protections." Zinermon v. Burch, 494 U.S. 113, 135 (1990); see also Martine's Service Center, Inc. v. Town of Wallkill, No. 13-1604, 2014 WL 321943, at *1 (2d Cir. Jan. 30, 2014).

Here, Defendants do not contend that the suspension and termination of Plaintiff were random and unauthorized acts. See generally Mem.; Reply. Indeed, Leeds's personnel power is explicitly contemplated by New York General Municipal Law § 209-l, which, although it provides for, and imposes procedural limitations on, the "[r]emoval of . . . volunteer members of fire departments" by "authorities having control of fire departments of cities, towns, villages and fire districts," also states that "[t]he provisions of this section shall not affect the right of members of any fire company to remove a volunteer officer or voluntary member of such company for failure to comply with the constitution and by-laws of such company."[8] Defendants acknowledge that Plaintiff was removed for his violation of Leeds's by-laws. Reply at 8. The statutory contemplation of Leeds's personnel actions plausibly renders them "authorized" by the state. See Martine's Srvc. Ctr., 2014 WL 321943, at *1 ("[A]llegations in the complaint that suggest that any violation . . . was made pursuant to a statute, code, regulation, or custom . . . may indicate that [p]laintiffs have sufficiently alleged that the deprivation was not random and unauthorized." (brackets and quotation marks omitted)). And that the Board actually held a pre-termination hearing further indicates that the suspension and termination were not random and unauthorized. See Rivera-Powell v. N.Y.C.

---

[8] Defendants argue that, because § 209's notice and hearing requirements apply only to the Towns and not to Leeds, Plaintiff was not entitled to a notice and a hearing. See Reply at 5-6. But Plaintiff brings a claim for a violation not of § 209's notice and hearing requirements, but of the Constitution's notice and hearing requirements.

15

Bd. of Elections, 470 F.3d 458, 466 n.8 (2d Cir. 2006) ("[T]o the extent that the purpose of the [state-authorization] inquiry is to determine whether the government actor could have provided pre-deprivation process, that question must clearly be answered in the affirmative here, because the Board actually conducted a hearing."); see also Zinermon, 494 U.S. at 136-37 (basing determination that Constitution required pre-deprivation hearing on, *inter alia*, possibility of providing such a hearing); Giglio, 732 F.2d at 1135 ("Where a pre-deprivation hearing is *impractical* and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." (emphasis added)). Plaintiff has sufficiently alleged that his suspension and termination were state-authorized, and thus that he was entitled to pre-suspension and pre-termination hearings. His failure to pursue an Article 78 proceeding therefore does not preclude him from bringing a procedural due process claim. The Court must next determine whether Leeds provided the pre-deprivation process to which Plaintiff was entitled.

### 2. *Sufficiency of the Pre-Deprivation Process*

"The pretermination process 'need not be elaborate' or approach the level of a 'full adversarial evidentiary hearing,' but due process does require that before being terminated such an 'employee be given oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" Otero v. Bridgeport Housing Auth., 297 F.3d 142, 151 (2d Cir. 2002) (alterations omitted) (quoting Loudermill, 470 U.S. at 545, 546).

Plaintiff alleges that he did not receive any notice of the reason for his suspension until he was suspended. See Compl. ¶¶ 25-29. He has thereby plausibly alleged insufficient notice to permit him to respond prior to the suspension. See Brock v. Roadway Express, Inc., 481 U.S. 252, 261(1987) (holding that the pre-deprivation opportunity to respond "must be afforded at a

16

meaningful time and in a meaningful manner."); cf. McDaniels v. Flick, 59 F.3d 446, 456 (3d Cir. 1995) (finding that more than two weeks between notice and hearing gave plaintiff meaningful opportunity to present his case). Moreover, even if the timeliness of the notice were sufficient, Plaintiff alleges that he was not told the identity of the employee accusing him of making a harassing comment. See Otero, 297 F.3d at 151 (noting that an employee is entitled to an "explanation of the employer's evidence"); cf. Mueller v. Regents of Univ. of Minn., 855 F.2d 555, 559 (8th Cir. 1988) (finding notice sufficient where plaintiff was made aware of the identity of his accuser).

As to his termination, Plaintiff does allege that a pre-termination hearing was held before the Board, and that some evidence favorable to Plaintiff was presented. Compl. ¶¶ 31, 33. However, the Complaint alleges that neither Plaintiff nor anyone acting on his behalf was given an opportunity to be heard. Id.; see also Otero, 297 F.3d at 151 ("[D]ue process does require that . . . an employee be given . . . an opportunity to present his side of the story."). Moreover, while Plaintiff alleges that he received pre-hearing notice that he was facing potential discipline for the harassing comment, Compl. ¶ 29, he was, as discussed *supra,* terminated for "*multiple* counts of insubordination." Termination Notice (emphasis added). Thus, as alleged, he did not receive oral or written notice of all of the charges against him. See Sira v. Morton, 380 F.3d 57, 72 (2d Cir. 2004) ("[T]here must be sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense."). Plaintiff has therefore sufficiently alleged that the pre-suspension and pre-termination process he received was inadequate.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 6) to dismiss is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 11, 2014
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge